## The Despatch.

### Millard *et al.* *v.* The Despatch, (two cases.)

(*District Court, S. D. New York.* May 13, 1892.)

1. Salvage—Different Sets of Salvors—Award to Later Arrivals.
   Though subsequent events sometimes show that of several salvors the services of those arriving later could have been dispensed with, such later salvors are not to be deprived of all share in the award if they rendered accepted aid.

2. Same—Fire on Vessel—Tugs—City Fire Department.
   Fire broke out on a lighter lying in a slip in New York city. The city fire department began work on the fire, and shortly afterwards came two tugs, which pumped water on the flames. Afterwards came the harbor fire boat, to which one of the tugs surrendered her place. The value of the property saved was $17,000; one tug was worth $15,000, the other $12,000. *Held*, that the tug first to arrive should receive $200 as salvage, and the other $75.

In Admiralty. Libel for salvage. Decree for libelants.

*Wilcox, Adams & Green,* for libelants.
*Robinson, Bright, Biddle & Ward,* for claimants.

BROWN, District Judge. At about quarter past 9 in the evening of March 29, 1892, fire was discovered on board the lighter Despatch, which was moored outside of the steamship Saratoga on the upper side of pier 16, East river. Only one person, a watchman, was on board of the Despatch. He gave an alarm, and sent a signal to the city fire department, in answer to which an engine came near the dock, and a hose was run along and across the Saratoga upon the Despatch. A stream was also played for a short time from the deck of the Saratoga, but without much effect. Shortly after the fire department's hose began to play, several tugs came from the slip above to render assistance. The first to arrive was the libelants' steamtug Adelaide, which went to the starboard side of the lighter forward; next, the libelants' tug America, which went to the lighter's port quarter. Both played upon the lighter, and now claim salvage compensation.

The defense is that the services rendered by these tugs were of no value, inasmuch as there was sufficient help from the fire department without any aid from them. This defense, however, does not meet the whole case. It often appears at the end of the work that the services of the later of several salvors could have been dispensed with, since those which arrived earlier could have done the work. But in such cases those who come later are not wholly excluded, if they take part in the work; the amount of salvage is apportioned among all according to their merit. The present case must be decided in the same way. When the Adelaide arrived and began playing upon the boat, the extent of the fire and its probable persistence were not known, and could not be foreseen. Her service was accepted. She first played as directed by some of the firemen. Her hose was next played into the boiler house, where there was a good deal of smoke, and the light of fire was visible; and finally, when an opening was made through the deck, her hose was played into the hold forward, where most of the fire was. Nor can I doubt the testimony of the three persons on the America, that their hose was played into the boiler house on the port side, where smoke and the light of fire were visible for some little time before the city fire boat New Yorker arrived and ordered off the America to make room for the New Yorker. Whether such an order was authorized or not, it does not diminish the merit of the America that she gave way to the city tug, which was doubtless more fully equipped for the best service. The evidence makes it clear that the fire was not put out for one or two hours after the two tugs arrived. The Adelaide played her hose most of the time; the America, until the New Yorker came.

It is of the highest necessity that tugs as a rule shall hasten to help put out fire on vessels in the harbor, with all possible speed and alacrity. Reliance cannot be placed exclusively upon either the land or the water force of the city fire department, since circumstances very often occur in which the latter cannot render timely and effective aid. The first

minutes in cases of fire are also the most important. Sound policy requires that tugs which proceed promptly to the scene of danger and render accepted service shall be awarded a reasonable compensation.

The fire in this case, though at first seemingly slight, occasioned considerable damage, namely, about one quarter of the value of the lighter. Her value after the fire was $17,000; that of the two tugs $15,000 and $12,000 respectively. The fact, however, that there were abundant other means at hand to put out the fire diminishes greatly the allowance that otherwise might be properly made. A just allowance to the tugs, as their fair proportion of the whole service, will, I think, be $200 for the Adelaide, and $75 for the America; two thirds of these amounts to go to the owners of the tugs, and the other third to the officers and crews in proportion to their wages. Decrees may be entered accordingly, with costs.